UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JUAN AZAMY PUERTAS-MENDOZA, §<br>*Plaintiff* §<br>§<br>v. §<br>§<br>PAMELA JO BONDI, UNITED STATES §<br>ATTORNEY GENERAL; KRISTI LYNN §<br>NOEM, DIRECTOR OF UNITED §<br>STATES IMMIGRATION AND §<br>CUSTOMS ENFORCEMENT; TODD M. §<br>LYONS, DIRECTOR OF UNITED §<br>STATES IMMIGRATION AND §<br>CUSTOMS ENFORCEMENT; §<br>SYLVESTER ORTEGA, FIELD OFFICE §<br>DIRECTOR FOR DETENTION AND §<br>REMOVAL, U.S. IMMIGRATION AND §<br>CUSTOMS ENFORCEMENT; AND §<br>WARDEN REYNALDO CASTRO, §<br>SOUTH TEXAS DETENTION §<br>COMPLEX; §<br>*Defendant* § | Case No. SA-25-CA-00890-XR |

## ORDER GRANTING PETITION FOR HABEAS CORPUS

On this date, the Court considered the status of this case. After careful consideration, the Petition for Habeas Corpus (ECF No. 1) is **GRANTED**.

### BACKGROUND

On March 24, 2016, Petitioner Juan Azamy Puertas-Mendoza ("Puertas")—a citizen of Mexico—was ordered removed from the United States. On the same date, however, he was granted withholding of removal and relief under the Convention Against Torture ("CAT"). As a result, while he may not be removed to Mexico, 8 U.S.C. § 1231(b)(3), he can be removed to a third country. *Johnson v. Guzman Chavez*, 594 U.S. 523, 531–32 (2021).

1

Also on March 24, 2016, Immigration and Customs Enforcement ("ICE") released Puertas subject to an Order of Supervision requiring him to, among other things, attend annual check-ins with ICE. Puertas has complied with the Order of Supervision.

At Puertas's most recent check in, on July 17, 2025, ICE revoked his Order of Supervision and detained him in Pearsall, Texas. The Government has purportedly tried to get Petitioner to consent to removal to Mexico, including by threatening to send him to Syria if he refused. ECF No. 1 at 2.

ICE did not initially provide a reason for Puertas's detention but, about three weeks after it began, provided a "notice of revocation" claiming he was detained because "there [was] a significant likelihood of removal in the reasonably foreseeable future." ECF No. 6-1. The notice also said Puertas would "promptly be afforded an informal interview at which [he would] be given the opportunity to respond to the reasons for the revocation and to provide any evidence to demonstrate that [his] removal [was] unlikely." *Id.* ICE interviewed Puertas on August 7, 2025, and Puertas responded that any questions should be posed to his attorney. ECF No. 6-1 at 3.

Puertas filed this petition for a writ of habeas corpus, challenging his detention. ECF No. 1. The Government filed a Response, ECF No. 6, and Puertas filed a Reply, ECF No. 8. Later, Puertas filed a Motion for a Temporary Restraining Order, which largely restated his arguments for habeas relief. ECF No. 8.

## DISCUSSION

### I.   Legal Standard

A habeas petitioner must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)). The petitioner "bears the burden of

proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Id.* (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); also citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

**II.   Analysis**

Puertas argues he is entitled to relief for two reasons: First, he argues his detention is illegal under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable. Second, he argues Respondents have failed to comply with their own regulations, in violation of procedural due process. *See Accardi v. Shaughnessy*, 347 U.S. 260 (1954). The Court will address each point in turn.

   a.   <u>Petitioner's removal is not reasonably foreseeable.</u>

"[T]he Government ordinarily secures [a noncitizen]'s removal during" the ninety days following a final order for the person to be removed. *Zadvydas*, 533 U.S. at 682; 8 U.S.C. § 1231(a)(1). During that ninety-day "removal period," the person subject to removal is typically detained. *Zadvydas*, 533 U.S. at 682. Beyond that point, the Government may in some situations continue detaining them for as long as is "reasonably necessary" to secure their removal. *Id.*; 8 U.S.C. § 1231(a)(6). But, under *Zadvydas*, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." 533 U.S. at 699.

The Supreme Court has recognized a "presumptively reasonable period of detention" of six months following the removal period. *Id.* at 701. The parties have two primary disputes about this six-month period. First, they dispute whether a detained person can challenge their detention under *Zadvydas* at all if the period has not passed. Second, they disagree about whether the six-

3

month period begins running (1) when a petitioner's removal period ends (here, in 2016) or (2) when a petitioner is actually confined (here, in 2025).

### 1. A detained person may challenge their detention during the six-month period.

Respondents argue that a person detained by ICE may not challenge their detention on the basis that their removal is not "reasonably foreseeable" unless they have been detained for at least six months. ECF No. 6 at 6. That is incorrect.

*Zadvydas* recognized a "presumptively"—not categorically—reasonable period of detention. 533 U.S. at 699 (emphasis added); *Villanueva*, 2025 WL 2774610, at *10 ("[T]he presumption of constitutionality during that six-month period is rebuttable."); *Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *5–6 (D. Md. Sept. 8, 2025) (collecting cases). It did so merely to "guide" lower court determinations of whether removal is reasonably foreseeable. *Munoz-Saucedo v. Pittman*, No. CV 25-2258 (CPO), 2025 WL 1750346, at *6 (D.N.J. June 24, 2025) (quoting *Zadvydas*, 533 at 700–01). And *Zadvydas* unequivocally held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." 533 U.S. at 699–700.

"Some courts have held that until the six-month *Zadvydas* period concludes, detention is *conclusively* reasonable—in other words, that during that period courts are precluded from inquiring at all into whether removal is reasonably foreseeable." *Medina v. Noem*, No. 25-CV-1768-ABA, 2025 WL 2306274, at *5 (D. Md. Aug. 11, 2025) (collecting cases); *see also Chance v. Napolitano*, 453 F. App'x 535, 2011 WL 6260210 (5th Cir. 2011) (non-precedential opinion affirming a district court's finding that a challenge to post-removal detention was premature where *Zadvydas*'s six-month period had not passed); *Agyei-Kodie v. Holder*, 418 F. App'x 317, 2011 WL 891071, at *1 (5th Cir. Mar. 15, 2011) (same). But, again, *Zadvydas*'s creation of a *presumption*

4

and the case's actual rule—"if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute"—command against that understanding. *Zadvydas*, 533 U.S. at 699–700.

That said, a detained person who brings a *Zadvydas* claim before the presumptively reasonable six-month period has run will have a harder time establishing a right to relief. To make out a *Zadvydas* claim *after* the six months have run, a detained noncitizen need only "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. If they do so, "the Government must respond with evidence sufficient to rebut that showing." *Id.* But *before* the six-month period has run, a Petitioner must do something more. *Id.* They must *prove* "that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *Medina*, 2025 WL 2306274, at *6 (quoting *Munoz-Saucedo*, 2025 WL 1750346, at *6).

    2.  *It is unclear when the six-month period starts to run.*

It is unclear which standard applies here. Puertas argues he need only provide "good reason to believe" that removal is not foreseeable because the six-month period started running in 2016, immediately after his removal period ended. Respondents, on the other hand, argue that the six-month period did not begin running until Petitioner was actually confined. If that is correct, Petitioner would need to satisfy the more difficult standard. The question, then, is whether *Zadvydas*'s presumptively reasonable six-month period of confinement begins to run as soon as the removal period ends or only once the noncitizen is actually confined.

*Zadvydas* is not clear on this point. The petitioners there were not released after their removal period. 533 U.S. at 684–86. And *Zadvydas* spoke of "continued" detention, which could refer to detention "continu[ing]" without release from the removal period. *E.g.*, *id.* at 699 ("[O]nce

5

removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."). Those points might suggest the presumptively reasonable six-month period starts immediately after the removal period ends, regardless of when a noncitizen is physically detained. *Zavvar*, 2025 WL 2592543, at *4 ("[T]here is, at a minimum, a reasonable argument that the six-month period runs continuously from the beginning of the removal period, even if the noncitizen is not detained throughout that period.") (collecting cases).

On the other hand, *Zadvydas* was, at base, about ensuring people are not *confined* for an unreasonable period of time. *See* 533 U.S. at 682, 699–700. It speaks in terms of post-removal *confinement*, *e.g.*, *id.* at 701. ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."), and contrasted "detention" with "releas[ing]" someone "under supervision." *Id.* at 683 ("[A]s the post-removal-period statute provides, the Government 'may' continue to detain an alien who still remains here or release that alien under supervision."). Further, because detention's basic purpose in this context is to ensure one's presence at the time of removal, limiting the presumption of reasonableness to the six months immediately following the removal period might undermine "necessary Executive leeway" to determine when to begin the removal process. *See id.* at 700–701.

Given these competing arguments, it is unclear whether *Zadvydas*'s six-month period begins immediately when the removal period ends or when the challenging party is physically detained. But the Court need not decide that issue because Puertas is entitled to relief under either standard.

### 3. Application

Puertas has proven that there is no significant likelihood of his removal in the reasonably foreseeable future. Because he has satisfied this more demanding standard, he would also satisfy the "good reason" standard imposed if the six-month *Zadvydas* period has expired.

Very few people subject to withholding of removal or CAT relief are removed from the United States. ECF No. 7 at 18, 32. In fiscal year 2017, less than two percent of those granted withholding of removal were deported to a third country. *Id.* at 32. And that is not simply a matter of United States policy—foreign governments "routinely deny" requests to receive people who lack a connection to the would-be receiving country. ECF No. 7 at 18. The fact that removal to a third country is unusual is not necessarily decisive, but it is important context. *See Munoz-Saucedo*, 2025 WL 1750346, at *7; *Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) ("[T]he fact that alternative-country removal is rare does not make it statutorily unauthorized.").

Beyond the rarity (and difficulty) of removing a noncitizen to a third country, ICE has attempted to convince Puertas to agree to go to Mexico—a country to which he cannot legally be removed. ECF No. 1 at 2; *see generally* ECF No. 6 (failing to deny these allegations). It has allegedly even threatened to send him to Syria if he refuses to return to Mexico. Such attempts to force Puertas to give up his withholding of removal and CAT relief strongly suggest the Government has no reason to believe it will be able to remove him to a third country. That is, if the Government believed that a third country would accept him, it would have no reason to insist upon his removal to Mexico. Further, there is no indication that the Government attempted to remove Petitioner during the *nine years* between his order of removal and his detention in 2025 or that the Government has found a country to take him.

Finally, ICE did not initially provide Puertas with any justification for his detention. *See* ECF No. 6-1 (dated August 7, 2025). Indeed, ICE did not offer any explanation until the day it filed its response in this case—about three weeks after detaining Puertas. *Id.*; ECF No. 6; ECF No. 1 at 2. And the explanation it eventually provided was cursory (and conclusory) at best, stating simply, "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case." ECF No. 6-1.

Taken together, the rareness of removal to a third country, ICE's attempts to convince Puertas to consent to removal to a country where he cannot legally be removed, the long period of time between Puertas's removal order and his detention, the initial lack of any explanation for Puertas's detention in 2025, and the cursory explanation ultimately provided show that Puertas's removal is not reasonably foreseeable. *See Villanueva*, 2025 WL 2774610, at *10 (granting petition for writ of habeas corpus based on *Zadvydas* where detainee had withholding of removal, the Government had not initiated proceedings to lift the order to withhold removal, the Government had failed to remove him for eight years following his order of removal, and there was no evidence that circumstances had changed to make removal reasonably foreseeable). Thus, Puertas must be released. *Zadvydas*, 533 U.S. at 699.

    b. <u>The Court need not decide the procedural due process issue.</u>

Puertas also argues he is entitled to habeas relief because ICE deprived him of procedural due process by failing to comply with their own regulations.

"Upon" revoking someone's release, ICE must notify the person "of the reasons for revocation." 8 C.F.R. 241.13(i)(3). ICE also must "conduct an initial informal interview promptly after" the detained person's return to custody "to afford [them] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* Here, ICE did not comply with at least the

first of these requirements—it did not provide Puertas any reason for his detention "upon" his being detained. Instead, it took three weeks to provide a reason—assuming the reason it eventually gave was even sufficient to satisfy the requirement.

In the Fifth Circuit, "[f]ailure to adhere to regulations can constitute a denial of due process of law." *Francois v. Garland*, 120 F.4th 459, 465 (5th Cir. 2024) (quoting *Arzanipour v. I.N.S.*, 866 F.2d 743, 746 (5th Cir. 1989)); *see Accardi*, 347 U.S. 260. "The failure of an agency to follow its own regulations is not, however, a per se denial of due process unless the regulation is required by the constitution or a statute." *Arzanipour*, 866 F.2d at 746. Violation of a regulation not required by the Constitution or a statute constitutes a denial of procedural due process if the claimant shows "substantial prejudice" arising from the violation. *Francois*, 120 F.4th at 466. The parties have not meaningfully briefed either (1) whether the relevant regulations are required by the Constitution or a statute or (2) whether Petitioner has shown substantial prejudice. Because Puertas is entitled to relief in any event, the Court will not address these issues here.

    c. <u>Attorney's Fees</u>

Puertas requests attorney's fees under the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412(d)(1)(A). Because fees under the EAJA are not available in habeas corpus proceedings like this one, that request is denied. *Barco v. Witte*, 65 F.4th 782. (5th Cir. 2023).

## CONCLUSION

For the foregoing reasons, the Petition for Habeas Corpus (ECF No. 1) is **GRANTED**. It is **ORDERED** that:

    1.    Respondents are **DIRECTED** to **RELEASE** Petitioner Juan Azamy Puertas-Mendoza from custody, under appropriate conditions of release, to a public place by **no later than 12:00 p.m. on October 23, 2025;**

2. Respondents must **NOTIFY** Petitioner's counsel of the exact location and exact time of Petitioner's release as soon as practicable and **no less than two hours before his release.**

3. Puertas's Motion for a Temporary Restraining Order (ECF No. 8) is **DENIED AS MOOT**, and the hearing scheduled for October 27, 2025, at 11:00 a.m. is **VACATED.**

4. A final judgment will issue separately.

It is so **ORDERED**.

**SIGNED** this 22nd day of October, 2025.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE